~~SEALED~~    FILED

18 JUN 29 PM 4:28

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**UNSEALED PER ORDER OF COURT**

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>GANNON GIGUIERE (1),<br>OLIVER LINDSAY (2),<br><br>              Defendants. | Case No. **18 CR 3071 WQH**<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 –<br>Conspiracy to Commit Securities<br>Fraud; Title 15, U.S.C.,<br>Secs. 78j(b), 78ff, and Title 17,<br>C.F.R., Sec. 240.10b-5 –<br>Securities Fraud; Title 18,<br>U.S.C., Sec. 981(a)(1)(C), and<br>Title 28, U.S.C., Sec. 2461(c) –<br>Criminal Forfeiture |

The Grand Jury charges, at all times material:

**INTRODUCTORY ALLEGATIONS**

Relevant Individuals and Entities

1.  Defendant GANNON GIGUIERE, a resident of Newport Coast, California, worked as a stock promoter in Southern California, and controlled TheMoneyStreet.com.

2.  Defendant OLIVER LINDSAY, a resident of Georgetown, Cayman Islands, operated an offshore brokerage firm known as CMGT Capital Management (the "Offshore Brokerage Firm").

cc: PRETRIAL

APA:nlv:San Diego:6/29/18



3. TheMoneyStreet.com was a stock promotion website.

4. Kelvin Medical, Inc. ("Kelvin Medical") was a Nevada Corporation with its principal place of business in Nevada City, California. Kelvin Medical purported to be an "early participant in medical device and telehealth wearables with a focus on the development of artificial intelligence driven physical therapeutic technologies."

5. Eco Science Solutions, Inc. ("ESSI") was a Nevada corporation with its principal place of business in Makawao, Hawaii. ESSI purported to pursue several business models over time. In 2017, it purported to be "a premier health, wellness and alternative medicines business by effectively servicing and connecting wisely conscious consumers with like-minded businesses."

6. Confidential Witness 1 ("CW-1"), was a resident of California, and worked as a stock promoter.

7. A pump-and-dump scheme was a fraudulent scheme that typically involved the artificial inflation of the stock price of a publicly-traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effected the artificial inflation in share price by, among other things, issuing news releases and promotional materials regarding the company and its stock - often containing false, misleading, or exaggerated information - and by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares.

## Count 1 - Conspiracy

(18 U.S.C. § 371)

8. Paragraphs 1 through 7 of the Introductory Allegations above are re-alleged as if fully set forth herein.

    a. Beginning on a date unknown to the Grand Jury but no later than October 2017, and continuing until on or about March 2018, within the Southern District of California and elsewhere, defendants GANNON GIGUIERE, (GIGUIERE), and OLIVER LINDSAY, (LINDSAY), and other individuals and entities known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit an offense against the United States, that is, securities fraud, namely, to knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Kelvin Medical Inc.'s securities, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

MANNER AND MEANS

9. It was part of the conspiracy that defendants GIGUIERE and LINDSAY would obtain a material degree of control over Kelvin Medical, including by obtaining significant blocks of Kelvin Medical stock.

10. It was further part of the conspiracy that defendants GIGUIERE and LINDSAY would deposit Kelvin Medical stock in one or more accounts at domestic brokerage firms (the "KVMD Domestic Accounts"), and in one or more accounts at CMGT (the "CMGT Accounts," and collectively with the Domestic Accounts, the "KVMD Brokerage Accounts").

11. It was further part of the conspiracy that the CMGT Accounts would be held in the name of one or more nominees in order to conceal the fact that defendants GIGUIERE and LINDSAY controlled and had a beneficial interest in the shares in the CMGT Accounts.

12. It was further part of the conspiracy that defendant GIGUIERE would make misrepresentations to his brokerage firms in order to have the ability to deposit and trade Kelvin Medical shares at and through those firms.

13. It was further part of the conspiracy that defendants GIGUIERE and LINDSAY would conceal their affiliation with Kelvin Medical in order to hide their substantial control over the company.

14. It was further part of the conspiracy that defendants GIGUIERE and LINDSAY would engage in manipulative trading in Kelvin Medical stock in order to artificially avoid the deflation of, maintain, and inflate the share price of Kelvin Medical stock.

15. It was further part of the conspiracy that defendant GIGUIERE would draft, and cause to be drafted, corporate disclosures for Kelvin Medical.

16. It was further part of the conspiracy that defendant GIGUIERE would promote, or cause the promotion of, Kelvin Medical and its stock on TheMoneyStreet.com in order to artificially avoid the deflation of, maintain, and inflate the share price of Kelvin Medical stock.

17. It was further part of the conspiracy that defendant LINDSAY would engage call room operators to contact securities brokers and convince the brokers to purchase Kelvin Medical stock in their clients' accounts, in exchange for a fixed fee.

18. It was further part of the conspiracy that defendants GIGUIERE and LINDSAY would sell Kelvin Medical stock that was held in the KVMD Brokerage Accounts into the open market at inflated prices, which the conspirators would manipulate by promoting Kelvin Medical and its stock without disclosing their plan to sell such stock during the time that the promotions were disseminated, and during a period of manipulative trading.

19. It was further part of the scheme that defendants GIGUIERE and LINDSAY would create false pretenses for the transfer of money from the CMGT accounts to accounts controlled by defendant GIGUIERE.

20. It was further part of the conspiracy that defendants GIGUIERE and LINDSAY, along with CW-1, would communicate by phone, email, and encrypted communications about the status and progress of the conspiracy.

OVERT ACTS

21. In furtherance of the conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

a. In or about October 2017, defendant GIGUIERE, through an entity he controlled, bought 1,500,000 shares of Kelvin Medical stock pursuant to a stock purchase agreement.

b. On or about October 25, 2017, in connection with Kelvin Medical stock, defendant GIGUIERE falsely represented in a "Rule 144 Seller's Representation Letter" that he "is not at present and has not been during the preceding three months, an officer, director, or 10% shareholder of the Company or in any other way an 'affiliate' of the Company."

c. In or about November 2017, defendant GIGUIERE caused 1,500,000 shares to be deposited in the KVMD Domestic Brokerage Account.

d. Between October and December 2017, defendant GIGUIERE obtained an additional 1,500,000 shares of Kelvin Medical stock, and caused those shares to be deposited in a CMGT account in the name of a nominee entity controlled by Lindsay.

e. On or about November 29, 2017, defendants GIGUIERE and LINDSAY engaged in a coordinated, open market transaction in Kelvin Medical stock. Defendant GIGUIERE caused one or more offer(s) from the KVMD Domestic Accounts of 28,350 shares of Kelvin Medical stock at approximately $.22 per share in the open market, and defendant LINDSAY caused the purchase of those shares.

f. On or about the following dates, defendants GIGUIERE and LINDSAY, along with CW-1 corresponded telephonically or via messaging apps in order to execute their plan to manipulate Kelvin Medical's stock price.

| Date | Partial Content of Call/Message |
|---|---|
| November 27, 2017 Call | GIGUIERE to CW-1: "Because we can manage, the nice thing about it, is we can manage, the price appreciation."<br><br>GIGUIERE to CW-1: "And look [UI] we've got 2.9 million shares, um, that, you know we'll be able to, you know, sell, as we allow this thing to-to go from a dollar to, let's say, to two dollars..." |
| November 29, 2017 Text | GIGUIERE to LINDSAY, CW-1: "I have offers of $5,000 GTC laddered in .10 increments up to 1.00 FYI. … so you guys can do your thing now as BMA is clear." |
| November 30, 2017 Text | GIGUIERE to GANNON, CW-1: "I'm leaking the ticker to a few greedy people in a vague fashion. Bids should be ther [sic]."<br><br>GIGUIERE to LINDSAY, CW-1: "I suggest 1500 to 2000 shares a day in KV at .55 and I will just have a large offer there showing min, for the next 5 to 7 trading days. let's let a week go by right here with a little volume and at this price. then we can move it." |
| December 5, 2017 Text | GIGUIERE to LINDSAY, CW-1: "I will move BMA to offer 3,000 at .75 …, meaning I will drop them to 3000 from 50000 … and then Ollie can come in alongside them at .75."<br><br>GIGUIERE to LINDSAY, CW-1: "I will have BMA then move to .85 at 1000. … So they can sell a touch up to 1. … so will have them at .95 for 1000 and 1 for 1000."<br><br>GIGUIERE to GANNON, CW-1: "Ok I get it." |
| December 8, 2017 Call | LINDSAY to CW-1: "I'm a little bit, uh, hesitant about typing in all these details into this app...You can just imagine if it finds its way somewhere its, uh, fairly incriminating." |
| December 18, 2017 Text | GIGUIERE to LINDSAY, CW-1: "Let's tick it up to 1.05. so we have a touch of green at close." |

7

1       g.   On or about December 8, 2018, defendant LINDSAY caused call room operators to call securities brokers and convince the brokers to purchase Kelvin Medical stock in their client's accounts.

        h.   On or about January 18, 2018, defendant GIGUIERE caused Kelvin Medical to submit to the United States Securities and Exchange Commission a report on Form 8-K, announcing, in part, that "along with its Therm-N-Ice product development, it has evolved into an early stage telehealth wearable technology company." The report also stated that "[o]ur company intends to leverage artificial intelligence and machine learning combined with the latest advancements in monitoring and therapeutic delivery technologies."

        i.   From on or about January 29, 2018 until in or around March 2018, defendant GIGUIERE promoted, or caused the promotion of, Kelvin Medical and its stock on the TheMoneyStreet.com.

        j.   From on or about November 29, 2017 through on or about January 16, 2018, defendant GIGUIERE sold, or caused to be sold, 1,500,000 shares of Kelvin Medical stock from the KVMD Domestic Accounts for gross proceeds of approximately $1,674,188.36.

        k.   From on or about December 8, 2017 through on or about March 15, 2018, defendant LINDSAY sold, or caused to be sold, approximately 263,000 shares of Kelvin Medical stock from the CMGT Accounts for gross proceeds of approximately $375,110.49.

        l.   On or about March 26, 2018, defendant GIGUIERE sent an email to defendant LINDSAY attaching a $125,000 "Promissory Note" between the nominal owner of one of the CMGT accounts, and Shop to Brands, Inc., which defendant GIGUIERE controlled.

        All in violation of Title 18, United States Code, Section 371.

## Count 2 - Securities Fraud

(Title 15, U.S.C., Secs. 78j(b), 78ff, and

Title 17, C.F.R., Sec. 240.10b-5)

22. The allegations set forth in paragraphs 1 through 7 are re-alleged as if fully set forth herein.

23. Beginning on a date unknown to the Grand Jury but no later than October 2017, and continuing until on or about March 2018, within the Southern District of California and elsewhere, defendants GANNON GIUGIERE and OLIVER LINDSAY did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by Kelvin Medical, Inc., in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Kelvin Medical Inc.'s securities.

24. Paragraphs 9 through 21 of Count 1 are realleged and incorporated by reference as more fully describing the manipulative and deceptive devices and contrivances used in connection with the purchase and sale of securities.

All in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Count 3 - Conspiracy

(18.S.C. § 371)

25. Paragraphs 1 through 7 of the Introductory Allegations above are re-alleged as if fully set forth herein.

26. Beginning on a date unknown to the Grand Jury but no later than in or about January 2016, and continuing until in or about January 2017, within the Southern District of California and elsewhere, defendant GANNON GIGUIERE, (GIGUIERE), and other individuals and entities known and unknown to the Grand Jury, did knowingly and intentionally conspire to commit an offense against the United States, that is, securities fraud, namely, to knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Eco Science Solutions, Inc.'s securities, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## MANNER AND MEANS

27. It was part of the conspiracy that defendant GIGUIERE and CW-1 would obtain a material degree of control over ESSI, including by obtaining significant blocks of ESSI stock.

28. It was further part of the conspiracy that defendant GIGUIERE and CW-1 would deposit ESSI stock in one or more accounts at domestic brokerage firms (the "ESSI Brokerage Accounts").

29. It was further part of the conspiracy that defendant GIGUIERE and CW-1 would make misrepresentations to their brokerage firms in order to have the ability to deposit and trade ESSI shares at and through those firms.

30. It was further part of the conspiracy that defendant GIGUIERE and CW-1 would conceal their affiliation with ESSI in order to hide their substantial control over the company.

31. It was further part of the conspiracy that defendant GIGUIERE would draft, and cause to be drafted, press releases and other corporate disclosures for ESSI.

32. It was further part of the conspiracy that defendant GIGUIERE would promote, or cause the promotion of, ESSI and its stock on TheMoneyStreet.com in order to artificially avoid the deflation of, maintain, and inflate the share price of ESSI stock.

33. It was further part of the conspiracy that defendant GIGUIERE and CW-1 would sell ESSI stock that was held in the ESSI Brokerage Accounts into the open market at inflated prices, which the conspirators would manipulate by promoting ESSI and its stock without disclosing their plan to sell such stock during the time that the promotions were disseminated, and during a period of manipulative trading.

34. It was further part of the conspiracy that Defendant GIGUIERE and CW-1 communicated about the status and progress of, and plans regarding, the conspiracy.

## OVERT ACTS

35. In furtherance of the conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

   a. On or about December 9, 2015, an entity controlled by CW-1 obtained convertible debt that was previously issued by ESSI.

   b. On or about January 12, 2016, CW-1 caused his entity to convert a portion of the convertible debt into 1.3 million shares of ESSI stock, and to deposit those shares in an ESSI Brokerage Account.

   c. From on or about April 18, 2016 through on or about October 27, 2016, defendant GIGUIERE obtained approximately 6,207,953 shares of ESSI stock in the ESSI Brokerage Accounts. Defendant GIGUIERE obtained these shares pursuant to a technology licensing and marketing support agreement with ESSI, and a stock purchase agreement with ESSI's former Chief Executive Officer.

   d. On December 29, 2016, Defendant GIGUIERE submitted to a brokerage firm, in connection with ESSI stock, a "Stock Promotion Affidavit" falsely stating that "I am not involved in any promotional activity whatsoever. Third parties, of which I cannot control, will/may opine on what they choose to on any security listed, on any exchange."

   e. From in or about February 2016 through in or about May 2016, defendant GIGUIERE promoted, or caused the promotion of, ESSI and its stock on the TheMoneyStreet.com.

   f. On or about January 21, 2016, defendant GIGUIERE caused ESSI to issue a press release titled "Eco Science Solutions, Inc.

Launches Core Mobile and E-Commerce Platforms to Stake Claim in the Multi-Billion Dollar Cannabis Industry."

g. On or about March 30, 2016, defendant GIGUIERE caused ESSI to issue a press release announcing the launch of "Fitrix," which was purportedly "a powerful and flexible companion which helps you keep track of your day to day fitness routines, dietary habits and alternative medicine intake."

h. From on or about January 22, 2016 through on or about March 11, 2016, CW-1 sold, or caused to be sold, approximately 991,020 shares of ESSI stock from an ESSI Brokerage Account for gross proceeds of approximately $270,538.

i. From on or about July 5, 2016 through on or about January 18, 2017, defendant GIGUIERE sold, or caused to be sold, approximately 5,839,444 shares of ESSI stock from two ESSI Brokerage Accounts for gross proceeds of approximately $8,564,401.

All in violation of Title 18, United States Code, Section 371.

### Count 4 - Securities Fraud
(Title 15, U.S.C., Secs. 78j(b), 78ff, and
Title 17, C.F.R., Sec. 240.10b-5)

36. The allegations set forth in paragraphs 1 through 7 are re-alleged as if fully set forth herein.

37. Beginning on a date unknown to the Grand Jury but no later than January 2016, and continuing until in or about January 2017, within the Southern District of California and elsewhere, defendant GANNON GIUGIERE did knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the mails, use and employ manipulative and deceptive devices and

contrivances in connection with the purchase and sale of securities issued by Eco Science Solutions, Inc., in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud, (b) making and causing to be made untrue statements of material fact, and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and sellers and purchasers of Eco Science Solutions, Inc.'s securities.

38. Paragraphs 27 through 35 of Count 3 are realleged and incorporated by reference as more fully describing the manipulative and deceptive devices and contrivances used in connection with the purchase and sale of securities.

All in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATIONS

39. The allegations contained in paragraphs 1 through 7 and Counts 1 through 4 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

40. Upon conviction of one or more of the offenses set forth in Counts 1 through 4, defendants GANNON GIGUIERE and OLIVER LINDSAY shall forfeit to the United States any property, real and personal, constituting or derived from proceeds traceable to such offenses.

41. Pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the amounts described above, if, as a result of any act or omission of the defendants, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

DATED: June 29, 2018.

A TRUE BILL:

_____
Foreperson

ADAM L. BRAVERMAN
United States Attorney

By: _____
AARON P. ARNZEN
Assistant U.S. Attorney

15