# Exhibit A



## THE UNITED STATES ATTORNEY'S OFFICE
## NORTHERN DISTRICT of OHIO

U.S. Attorneys » Northern District of Ohio » News

**Department of Justice**

U.S. Attorney's Office

Northern District of Ohio

FOR IMMEDIATE RELEASE　　　　　　　　　　　　　　　　Tuesday, January 31, 2017

# Eight people sentenced to prison for penny-stock fraud that resulted in $39 million loss to investors

Eight people were sentenced to prison this month for their roles in a penny-stock fraud that resulted in a $39 million loss to investors, said Carole S. Rendon, U.S. Attorney for the Northern District of Ohio, and Stephen D. Anthony, Special Agent in Charge of the FBI's Cleveland Office.

Zirk de Maison, of Redlands, California, was sentenced to more than 12 years in prison and ordered to pay $39.1 million in restitution.

Stephen Wilshinsky, of Woodland Hills, California, was sentenced to nearly three years in prison and $4.2 million in restitution.

Talman Harris, of Monroe, Connecticut, after a jury convicted him on all counts following a three-week trial, was sentenced to more than five years in prison and $843,423 in restitution.

Gregory Goldstein, of Stevenson Ranch, California, was sentenced to nearly three years in prison and $6.3 million in restitution.

Jack Tagliafero, of Glen Cove, New York, was sentenced to more than five years in prison and more than $5 million in restitution.

Victor Alfaya, of Port Washington, New York, was sentenced to nearly two years in prison and $3.6 million in restitution.

Kieran Kuhn, of Port Washington, New York, was sentenced to nearly four years in prison and $5.6 million in restitution.

William Scholander, of Queens, New York, was sentenced to nearly two years in prison and $843,423 in restitution.

Two additional co-conspirators have their sentencings scheduled for February and July 2017.

de Maison and the other defendants conspired to defraud investors and potential investors in several public issuers, including Kensington Leasing, Ltd., Lenco Mobile, Casablanca Mining, Ltd., Lustros, Inc., and Gepco Ltd., (the manipulated companies), by issuing millions of shares to themselves at little or no cost and then artificially controlling the price and volume of traded shares by, among other means, paying undisclosed commissions to brokers, former brokers, and boiler-room operators and promoters, for soliciting investors to make investments in, and fraudulently concealing the ownership interests of, the manipulated companies, according to court documents.

Little or no portion of the investments went to fund the operations of the manipulated companies. Rather, de Maison and the co-conspirators used most of the investments to enrich themselves, according to court documents.

For each of the manipulated companies, de Maison and other co-conspirators controlled a substantial number of outstanding shares through their personal companies, co-conspirators, and associates over which they had influence and control.

Many of the defendants were brokers and former brokers who abused their client relationships to solicit and induce investors to purchase de Maison's stock in the manipulated companies at what they knew to be artificially inflated values. In exchange, de Maison paid the brokers and former brokers enormous, illegal kickbacks, often as large as 50% of the investment, which were never disclosed to the client-investors.

Other defendants either owned or worked in what were commonly referred to as boiler rooms. For instance, Kuhn owned and operated a boiler room called Small Cap Resources in New York City, where he employed promoters to cold call and solicit potential investors to purchase shares of the manipulated companies. de Maison and others dictated what stocks Kuhn and others pushed. The cold calls to potential investors typically coincided with favorable press releases or other information that de Maison caused to be released, according to court documents.

Kuhn and others touted the manipulated companies using high-pressure sales tactics and misrepresentations about the value of the companies and their stock. The boiler room promoters did not disclose that de Maison and other co-conspirators paid them commissions on the sale of the stock to the investors, either on the open market or through private placements, according to court documents.

de Maison and his co-conspirators caused more than $54 million to be invested in the purchase of stock in the manipulated companies and caused a loss to investors in the amount of approximately $39 million from the scheme. de Maison profited through the fraudulent scheme relating to the companies' stocks. He received and embezzled approximately $39 million in investor monies, according to court documents.

The case was prosecuted by Assistant U.S. Attorneys Christos N. Georgalis, Paul M. Flannery, and Adam Hollingsworth after an investigation by agents of the Federal Bureau of Investigation.

**Topic(s):**
Financial Fraud

**Component(s):**
USAO - Ohio, Northern

Updated January 31, 2017

# Exhibit B

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 80737 / May 19, 2017

The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading in the securities of Eco Science Solutions, Inc. ("ESSI"), of Malawea, Hawaii at 9:30 a.m. EDT on May 22, 2017, and terminating at 11:59 p.m. EDT on June 5, 2017.

The Commission temporarily suspended trading in the securities of ESSI because of concerns regarding the accuracy and adequacy of publicly disseminated information concerning, among other things, ESSI's proposed acquisition of Ga-Du Bank, Inc.  This order was entered pursuant to Section 12(k) of the Securities Exchange Act of 1934 (Exchange Act).

The Commission acknowledges FINRA's assistance in this matter.

The Commission cautions broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777.  If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to ESSI's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met.  If any broker or dealer enters any quotation which is in violation of the rule, the Commission will consider the need for prompt enforcement action.

If any broker-dealer or other person has any information which may relate to this matter, they should immediately contact Gerald Gross, Assistant Regional Director, New York Regional Office at (212) 336-0085 or Michael D. Paley, Assistant Regional Director, New York Regional Office at (212) 336-0145.