Michael Cedillos (SBN 284794)
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel.: (312) 456-8400
cedillosm@gtlaw.com

Miriam Bahcall (*pro hac vice*), IL ARDC #6191823, bahcallm@gtlaw.com
John F. Gibbons (*pro hac vice*), IL ARDC #6190493, gibbonsj@gtlaw.com
Attorneys for Defendant Gannon Giguiere

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America<br><br>    Plaintiff,<br><br>v.<br><br>Gannon Giguiere (1), and<br>Oliver Lindsay (2),<br><br>    Defendants. | CASE NO.  18-CR-3071 WQH<br><br>**DEFENDANT GANNON GIGUIERE'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND RETURN PROPERTY** |

In response to the government's Supplemental Brief in Opposition to Defendant Gannon Giguiere's ("Mr. Giguiere") Motion to Compel Discovery and Return Property ("Supplemental Brief"), Mr. Giguiere states as follows:

**I.    Outstanding Discovery Material**

During the parties' Motions Hearing on March 11, 2019 ("March 11 Hearing"), Your Honor instructed defense counsel to use future briefing to inform the Court what further discovery Mr. Giguiere needs, based on what has already been produced. March 11 Hearing Tr., attached hereto as Exhibit A, at 21:17 – 22:1. Based on the production of discovery to date and representations made by the government in its Supplemental Brief informing that a substantial amount of discovery is still incoming, Mr. Giguiere posits that such representation would be as-yet premature.

For example, at three (3) different junctures in its Supplemental Brief, the government represents that it "soon will be" producing certain categories of discovery to

the co-defendants. *See* Supp. Br., ECF No. 96, at 4:22, 6:13, 11:17. Regarding another tranche of discovery, the government states that it will make specific disclosures "shortly after [confidential informant Michael] Forster terminates his purported participation in the scheme(s), which will be well in advance of trial." *Id.* at 11:6-8. The government offers no date, or range of dates, for when such disclosures might be made.

As set forth below, and in response to the government's Supplemental Brief, Mr. Giguiere believes that he is legally entitled to a significantly larger scope of discovery than the government has thus far been willing to produce. But out of an abundance of caution and because he has not yet received what may well be a substantial amount of discovery, Mr. Giguiere respectfully submits that until such time as his trial team possesses a more complete picture of what materials he has received, Mr. Giguiere is not yet prepared to apprise the Court of the sufficiency of the government's disclosures.

## II. Mr. Giguiere's Response to the Categories of Discovery Addressed in the Government's Supplemental Brief

### A. Historical Pump-and-Dump / Market Manipulation Schemes – No Additional Evidence Gathered

The government states that, during debriefs, Forster indicated that he "was part of an effort to manipulate, knew of efforts to manipulate, or suspected efforts to manipulate" eleven (11) different stocks, but about which the FBI's San Diego Field Office ("FBI-SD") did not gather additional evidence. Supp. Br., at 3:8-14. The Government admits its awareness of "possible schemes surrounding these stocks," but adopts the position that it has no legal requirement to "canvas" other offices, departments, or agencies to gather evidence about these specific stocks. *Id.* at 3:18-23. "In other words," the Government states, "no additional materials are in the possession, custody or control of the United States Attorney's Office, or [FBI-SD]." *Id.* at 3, n.1.

This position seemingly contravenes the notion of the Court, made explicit during the March 11 Hearing. At the hearing, the Court stated that the Government is probably not required "to contact every US Attorney's Office, contact every FBI field office, contact every SEC office, and make them affirmatively check to see if [Forster's] name comes up."

March 11 Hearing Tr. at 23:22 – 24:3. "But," the Court continued, "on the other hand, certainly if the government was aware or if an FBI working on this, working with the government, knew of three others that were some other place, then I think the government may have an obligation to disclose that[.]" *Id.* at 24:5-9.

To be sure, the Court declined to require the government to "canvas" every governmental agency for information about Forster. *See id.* at 26:13-16. But the government plays loose with this ruling in it Supplemental Brief, conveniently refashioning Your Honor's words into an excusal of the government's duty to disclose substantive information about fraudulent schemes that it readily admits it is aware of. As the Court stated, the government may not have an affirmative obligation to "search every US Attorney Office, every SEC office, but to the extent that they know about it, that is a different story." *Id.* at 25:10-15. Mr. Giguiere respectfully submits that, consistent with the Court's comments, the government has a duty to gather and produce relevant information regarding the eleven stocks the government has admitted to possessing knowledge of.

**B. Historical Pump-and-Dump / Market Manipulation Schemes – Additional Evidence Gathered**

Per the government, FBI-SD obtained additional evidence from Forster about schemes involving six (6) stocks different from those named above. *See* Supp. Br. at 4:3-7. The government discusses two of these stocks, "EVTI" and "SSSI," in brief detail, and does not discuss the other four at all.

Regarding EVTI, the government represents, "The SEC supplied FBI-SD with *many* of the documents the SEC obtained during its investigation; these documents have been produced to defendants in discovery in this case." *Id.* at 4:11-14 (emphasis added). Mr. Giguiere is in no position to know what the government means by "many"; he only knows that it is not "all." Such incomplete discovery violates the intent of the Court's express statement that the government should supply Mr. Giguiere with information implicative of Forster's criminality, when the government knows such information might exist.

If the SEC, which worked side-by-side with FBI-SD and the U.S. Attorney's Office in their investigation of Mr. Giguiere, has withheld documents that pertain to Forster's involvement in the EVTI scheme, then Mr. Giguiere submits that the government should be required to disclose those documents. Indeed, Mr. Giguiere stated as much in his opening Motion to Compel Discovery and Return Property, arguing that the SEC should be considered part of the prosecution team for discovery purposes. *See* Mot., ECF No. 85, at 3 – 5. At the very least, Mr. Giguiere requests that the government be ordered to confirm that it conducted a *Brady* analysis of the EVTI file to ensure that its disclosures complied with *Brady v. Maryland*, 373 U.S. 83 (1963).

Mr. Giguiere requests the same of the SSSI file, from which "[a]ll reports that contained a reference to Forster (according to a computerized search of the FBI investigative file) have been, or will soon be, produced[.]" Supp. Br. at 4:20-22. Is the government's reference to "reports" restricted to written FD-302 and FD-1032 reports? Were documents that do not fit within the government's definition of "report" excluded from production? Might there be documents that pertain to Forster in the file that do not explicitly state his name? Without access to the SSSI file, Mr. Giguiere cannot know the answer to any of these questions. Unless the government can confirm that it conducted a thorough *Brady* analysis and concluded that nothing was excluded from the SSSI production that might exculpate Mr. Giguiere in any way, he requests that the government be ordered to disclose any documents (not merely reports) that pertain to Forster (not merely those that mention him by name).

As for the remaining four stocks, Mr. Giguiere is at a loss as to why the government did not elaborate on any of them. At the outset of § B. of its Supplemental Brief, the government concedes that it obtained additional evidence about all four ("ASNT," "CADY," "MNGA," and "WRIT") in the course of its dealings with Forster, but it never mentions the stocks again. *See* id. at 4. At the bottom of § B. of its Supplemental Brief, the government states that it has produced evidence regarding "these schemes" that has been gathered by FBI-SD, arguing that "there is no legal requirement that it canvas other offices,

departments, or agencies to gather additional evidence." Supp. Br. at 4:25 – 5:2. The brief does not clarify whether "these schemes" refer to (i) EVTI and SSSI; (ii) ASNT, CADY, MNGA, and WRIT; or (iii) all six schemes together. In any event, although Mr. Giguiere has received limited pieces of discovery on each of these six stocks, it appears that the government has conceded to knowing of additional information regarding all six. Per the Court's indicated position, Mr. Giguiere submits that he is entitled to that information.

### C. Historical Pump-and-Dump / Market Manipulation Schemes – Involvement with Defendants Giguiere and/or Lindsay

The government lists seventeen (17) tickers and companies that were or are the subject of schemes that Forster stated he was involved in alongside Mr. Giguiere and/or co-defendant Oliver Lindsay ("Mr. Lindsay"). Supp. Br. at 5:10-13. The government did not elaborate on what information it has or has not produced in relation to a single one of these tickers, other than to restate that "[e]vidence gathered by FBI-SD has been produced to defendants" and recite its argument that the government has no duty to gather additional evidence from other offices that might possess information about the stocks. *Id.* at 5:16-19. This despite the government's admission that it "has direct access to and knowledge of additional information or evidence" about these stocks. *Id.* at 5:15-16.

Again, Mr. Giguiere is confused as to how the government can concede direct knowledge and access to additional information about Forster's involvement in market manipulation schemes, but somehow maintain that it need not gather such information to produce to the defendants. This posture seems to fly in the face of the Court's articulations at the March 11 Hearing. For the reasons stated above, and per the representations in the government's Supplemental Brief, Mr. Giguiere submits that he is entitled to the "additional information or evidence" about which the government has "direct access to and knowledge of." *Id.* at 5:15-16.

**D. Additional Historical Pump-and-Dump / Market Manipulation Schemes**

### 1. The Cleveland Case

Regarding the Cleveland Case, it appears that Mr. Giguiere has thus far received seven pages of FBI reports and some audio and video of Forster's interactions with an investigation target. Once again, the government and Mr. Giguiere find themselves at loggerheads over the scope of the government's discovery obligations. Unlike the stocks discussed above, here the government explicitly states which other federal offices might possess additional information about Forster's involvement in the overlapping criminal and civil cases that comprise the Cleveland Case: the Cleveland U.S. Attorney's Office; the Cleveland FBI Office; and the SEC. *See* Supp. Br. at 6:14-17. In other words, the government concededly "knew of three others that were some other place." March 11 Hearing Tr. at 24:7-8. Giguiere requests that the government acquire and disclose what information those three entities have on the Cleveland Case that pertains to Forster.

### 2. Cuba Beverage Company

Finally, the government is declining to disclose "additional information" about Forster's involvement in a scheme concerning the stock of Cuba Beverage Company, despite having "direct access to and knowledge of" the additional evidence. *See* Supp. Br. at 7:6-12. Mr. Giguiere notes that the government has already made several productions that include information about Cuba Beverage Company.

However, the critical role that the Cuba Beverage Company plays in Forster's history with the government requires special attention. Indeed, the government offers that it was the Cuba Beverage scheme that caused FBI-SD agents to approach Forster, secure his cooperation, and once they turned Forster into a cooperator, dismissing the complaint against him. *See id.* at 6:19 – 7:5. This cooperation led Forster to record conversations in this case, resulting in the defendants' eventual indictments. *Id*.

If the government has direct access to any additional information about the scheme that motivated Forster to flip and cooperate, it is critical that Mr. Giguiere be permitted a fulsome review of such evidence. As described in detail below, any worthwhile cross-examination of

Forster in an entrapment context would zero in on Forster's motive for leading Mr. Giguiere past the point of no return. Information about the Cuba Beverage Company is central to that effort. While some of that information has already been turned over, Mr. Giguiere requests that the government be ordered to disclose additional, immediately accessible information from so critical a case.

### E. Forster's Additional Proactive Cooperation

The government's final discovery category concerns Forster's cooperation with "recent and/or ongoing market manipulation schemes." Supp. Br. at 7:14-15. Before addressing each such scheme, the government posits, "Critically, **none of this cooperation involves wrongdoing by Forster**[.]" *Id.* at 7:17-18 (emphasis in Supp. Br.). But the degree of Forster's wrongfulness in his acts on behalf of the government is far from Mr. Giguiere's only basis to seek information about Forster's cooperative efforts. Forster's motive, in and of itself and divorced from his "wrongdoing," is central to Mr. Giguiere's defense. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination").

As the Court noted, and as applies to each category of discovery discussed to this point, "the jury would be entitled to know that [Forster] – he somehow – I don't want to say beholden to the government, but he is hoping from the government in connection with this case, and that he is currently doing other things to help get additional benefits[.]" March 11 Hearing Tr. at 13:17-21. The Ninth Circuit has afforded this right to criminal defendants for nearly fifty years:

> [T]he hope or promise of some reward in the way of immunity, preferential treatment or lighter sentence provides a possible motive both for entrapping the defendant and for testifying falsely at the trial. Accordingly, the defense should always have the opportunity to show by way of cross-examination or otherwise that the actions of a government informer may have been impelled by any expectation of leniency in his own pending prosecution or sentence.

*Hughes v. U.S.*, 427 F.2d 66, 68 (9th Cir. 1970). Here, Forster's expectation of leniency is evidenced by every ounce of favor that his ongoing cooperation curries from the government.

Mr. Giguiere has a right to apprise the jury of each such example. That the moral nature of Forster's cooperation is not routinely nefarious does not somehow diminish Mr. Giguiere's right to defend himself via a demonstration that the government's case hinges on the cooperation of a man inextricably reliant upon the government's good graces. Such inextricability can only be elicited through exacting cross examination of the mounting favor that Forster continues to curry.

Rather than recognize Mr. Giguiere's right to a thorough cross-examination, the government shrugs, providing information regarding Forster's proactive cooperation that is as vague as it is incomplete. This recalls argument from the March 11 Hearing, when the government speculated that even without specific information about the cases Forster is working on, defense counsel will have plenty of material with which to cross-examine Forster. March 11 Hearing Tr. at 14:5-7. Mr. Giguiere rejects this contention substantively. Simply put, the Government cannot use discovery tactics to dictate the manner and scope of defense counsel's cross-examination. The jury is entitled to hear, and Mr. Giguiere requests the opportunity to present, a thorough cross of the lynchpin of the government's case. Neither the jury nor the defense should be limited to opaque references to ill-defined cooperation that leaves Mr. Giguiere looking uncertain and unprepared. *See Davis*, 415 U.S. at 318 (reversing conviction where "counsel was unable to make a record from which to argue *why* [the witness] might have been biased," "the jury might have thought that defense counsel was engaged in a speculative and baseless line of attack," and "defense counsel should have been permitted to expose to the jury the facts from which jurors [] could appropriately draw inferences relating to the reliability of the witness").

### 1. Public Companies 1, 2, and 3 and Private Company 1

Regarding four separate ongoing investigations into one private and three public companies, the government states that Forster has participated in discussions that, depending on the scheme, included anywhere from three to five illicit topics. *See* Supp. Br. at 8:23 – 9:4; 9:16-21; 10:8-13; 10:23 – 11:2. In each case, the government fails to say whether these topics comprise the entirety of the discussions, in what detail Forster engaged the targets on these

topics, or how Forster went about discussing the topics with each respective target.

This last element is particularly critical, as the recorded tapes in this case demonstrate Forster to be a remarkably sophisticated conversationalist, capable of leading his fellow interlocutor to profess any manner of unseemly things via a dexterous, manipulative blend of raw intelligence, flattery, and guile. Defense counsel is confident that evidence about the manner of Forster's engagement with targets across different investigations will demonstrate a person uniquely capable of siphoning from another individual exactly what the government wants to hear – and for the sake of Forster's personal benefit, what he needs to hear. Mr. Giguiere requires far more detail into Forster's engagement with these companies and targets to develop a meaningful cross-examination about what his trial team believes is a likely vital line of inquiry.

The government also describes each company as "small," never offering anything more in the way of detail about the company or the investigation's targets. *Id.* at 8:14; 9:8; 9:26; 10:17. Such opacity directly stymies another potential avenue of cross-examination, one that highlights the government's willingness to work with a career conman to go after small-time individuals with little to no criminal history. Such theory is not far-flung conjecture. To wit, Mr. Giguiere has no criminal history. Forster, on the other hand, "has been involved in penny stock fraud for many years, and has had contact with any number of other repeat players in the industry." United States' Response in Opposition to Defendant Giguiere's Motion to Compel Discovery and Return Property, ECF No. 86, at 3:9-11. If the government chose to dance with the devil just to pick off a series of relatively smaller players, the jury is entitled to know about it.

### 2. Additional Potential Stock Manipulation

It appears that the government is considering engaging Forster in certain additional schemes, but has not yet chosen to do so. Mr. Giguiere merely requests that, for the reasons already stated, should Forster be inserted into other investigations, the government immediately disclose the details of Forster's cooperation in each such instance.

### 3. *United States v. Luke Zouvas*

Mr. Giguiere received discovery relating to this case on March 27, 2019. At the time of filing, Mr. Giguiere's trial team has been unable to determine if these documents satisfy the government's representation that it would produce the evidence from the *Zouvas* case "surrounding Mr. Forster's participation in the investigation[.]" Supp. Br. at 11:16-17. Mr. Giguiere hereby reserves his right to request additional discovery materials in relation to this file.

### III. Conclusion

Consistent with his Motion to Compel Discovery and Return Property, Mr. Giguiere restates his requests for the discovery to which he is entitled. WHEREFORE, Mr. Giguiere respectfully requests the Court enter an order:

  i. Compelling the government to produce all materials that reveal and/or pertain to any prior convictions, guilty verdicts, guilty pleas, arrests, or other misconduct of the cooperator Michael Forster;

  ii. For those materials that the government is not required to disclose, compelling the government to confirm that it conducted a *Brady* review of the material:

  iii. Compelling the government to produce all materials that reveal and/or pertain to any ongoing cooperation efforts between Forster and the government;

RESPECTFULLY SUBMITTED this 15th day of April, 2019.

GREENBERG TRAURIG, LLP


By: */s/ John F. Gibbons*
Michael Cedillos
Miriam Bahcall*
John F. Gibbons*
*Pro Hac Vice

*Attorneys for Defendant Gannon Giguiere*

# CERTIFICATE OF SERVICE

I hereby certify that on <u>April 15, 2019</u>, I caused to be filed electronically **DEFENDANT'S MOTION TO COMPEL DISCOVERY** with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

| | |
|---|---|
| ROBERT S. BREWER, JR.<br>UNITED STATES ATTORNEY<br>AARON P. ARNZEN<br>ANDREW J. GALVIN<br>Assistant United States Attorneys<br>United States Attorney's Office<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>Tel: 619-546-8384/9721<br>Emails: Aaron.Arnzen@usdoj.gov<br>Andrew.Galvin@usdoj.gov<br><br>*Attorneys for Plaintiff United States of America* | MICHAEL L. LIPMAN<br>KAREN LEHMANN ALEXANDER<br>DUANE MORRIS LLP<br>750 B Street, Suite 2900<br>San Diego, CA 92101-4681<br>Tel: 619.744.2200<br>Emails: mllipman@duanemorris.com<br>klalexander@duanemorris.com<br><br>*Attorneys for Defendant Oliver Lindsay* |

By:  */s/ John F. Gibbons*
JOHN F. GIBBONS
Attorney for Defendant Gannon Giguiere
E-mail: gibbonsj@gtlaw.com