Michael Cedillos (SBN 284794)
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel.: (602) 445-8000
cedillosm@gtlaw.com

Miriam Bahcall (*pro hac vice*), IL ARDC #6191823, bahcallm@gtlaw.com
John F. Gibbons (*pro hac vice*), IL ARDC #6190493, gibbonsj@gtlaw.com
Attorneys for Defendant Gannon Giguiere

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America | CASE NO.  18-CR-3071 WQH |
| Plaintiff, | **EXHIBIT A TO DEFENDANT GANNON GIGUIERE'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND RETURN PROPERTY** |
| v. | |
| Gannon Giguiere (1), and Oliver Lindsay (2), | |
| Defendants. | |

RESPECTFULLY SUBMITTED this 16th day of April, 2019.

GREENBERG TRAURIG, LLP


By: */s/ John F. Gibbons*
Michael Cedillos
Miriam Bahcall*
John F. Gibbons*
*Pro Hac Vice

*Attorneys for Defendant Gannon Giguiere*

1

# EXHIBIT A

## TO DEFENDANT GANNON GIGUIERE'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND RETURN PROPERTY

## MARCH 11, 2019 HEARING TRANSCRIPT

```
 1                    UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3
   UNITED STATES OF AMERICA,         )
 4                                    )
        Plaintiff,                    ) No. 18-CR-3071-WQH
 5                                    )
             v.                       ) March 11, 2019
 6                                    )
                                      ) 2:14 p.m.
 7 GANNON GIGUIERE,                   )
   OLIVER LINDSAY                     ) San Diego, California
 8                                    )
        Defendants.                   )
 9 _____

10
                    TRANSCRIPT OF MOTIONS HEARING
11            BEFORE THE HONORABLE WILLIAM Q. HAYES
                    UNITED STATES DISTRICT JUDGE
12
   APPEARANCES:
13
   For the Plaintiff:        United States Attorney's Office
14                           By:  AARON ARNZEN, ESQ.
                                  ANDREW GALVIN, ESQ.
15                           880 Front Street, Room 6293
                             San Diego, California  92101
16
   For the Defendants:       Greenberg Traurig LLP
17                           By:  JOHN GIBBONS, ESQ.
                                  MICHAEL CEDILLOS, ESQ.
18                                MIRIAM GOLDMAN BAHCALL, ESQ.
                             77 West Wacker Drive, Suite 3100
19                           Chicago, Illinois 60601

20                           Duane Morris LLP
                             By:  MICHAEL LIPMAN, ESQ.
21                           750 B Street, Suite 2900
                             San Diego, California 92101
22
   Court Reporter:           Melinda S. Setterman, RPR, CRR
23                           333 West Broadway, Suite 420
                             San Diego, California 92101
24                           melinda_setterman@casd.uscourts.gov

25 Reported by Stenotype, Transcribed by Computer
```

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | SAN DIEGO, CALIFORNIA, MARCH 11, 2019, 2:14 P.M.                   |
|       | 2  | * * * *                                                            |
|       | 3  | (Defendant Giguiere present.)                                      |
|       | 4  | THE CLERK:  Number 16 on calendar, case number                    |
| 02:14 | 5  | 18-CR-3071, United States of America vs Gannon Giguiere and        |
|       | 6  | Oliver Lindsay, on for motion hearing.                             |
|       | 7  | MR. GIBBONS:  Good afternoon, Your Honor.  John                    |
|       | 8  | Gibbons and Michael Cedillos on behalf of Mr. Giguiere, who is     |
|       | 9  | present in the courtroom.                                          |
| 02:15 | 10 | THE COURT:  All right.                                             |
|       | 11 | MR. LIPMAN:  Good afternoon, Your Honor.  Michael                  |
|       | 12 | Lipman on behalf of Mr. Lindsay, whose presence has been          |
|       | 13 | waived.                                                            |
|       | 14 | THE COURT:  Counsel, we're here on a discovery motion             |
| 02:15 | 15 | that has been filed.                                              |
|       | 16 | Mr. Gibbons, do you wish to be heard on the motion?  I           |
|       | 17 | reviewed it.  It seems like you -- you've agreed on a lot of      |
|       | 18 | things, just not everything.  Is that fair to say?               |
|       | 19 | MR. GIBBONS:  I would say that we agreed on certain              |
| 02:15 | 20 | things, but I wouldn't say it was a lot, Your Honor.  I think     |
|       | 21 | part of it hinges on how one defines "prosecutorial team," and    |
|       | 22 | if that prosecutorial team involves the SEC given their          |
|       | 23 | involvement with the informant Michael Forster prior to the      |
|       | 24 | FBI's involvement, the SEC lawyers and analysts involvement      |
| 02:16 | 25 | with debriefs with Michael Forster, both the very first time     |

|   |   |
|---|---|
|  | 1 |

```
            1    that the government debriefed Michael Forster and then

            2    continuing on for many months thereafter.

            3          If you define the SEC as part of the enforcement team

            4    where it meets the road is whether the SEC has gotten

  02:16     5    information relating to Michael Forster that affects Forster's

            6    ability to testify for the government, whether it is

            7    exculpatory or impeachment evidence, I believe that they do

            8    have that information, and the government has not gone to seek

            9    that.

  02:16    10          In return, they've said the SEC lawyers and analysts

           11    don't have any notes of these debriefings, but that really

           12    isn't the whole story.

           13          We do reach agreement on certain things, but that is a

           14    tip of the iceberg.  In our view there is a big iceberg sitting

  02:16    15    underneath that as it relates to Michael Forster.  I am not

           16    guessing at that.  The government put in writing in the letter

           17    writing that we have had back and forth that Michael Forster

           18    has been at this, this fraud for a very long time.

           19          THE COURT:  All right.  Excuse me for interrupting.

  02:17    20          Are you referring to this investigation of the

           21    defendant or that Forster was involved or any investigation

           22    that Forster was ever involved with?

           23          MR. GIBBONS:  Both.  And I tried to separate them to

           24    the government.  I believe the SEC involves this case and only

  02:17    25    this case.
```

4

1        The government, though, has reached out, when they

2   decided to try to flip Michael Forster at an airport meeting,

3   they had gotten other information, other cases, that their

4   colleagues in the Department of Justice were conducting in

02:17   5   relation to Forster.  They were armed with that.

6        One case we know was out of Cleveland.  I am not sure

7   of the other location.  When I spoke to the government about

8   that, they said, we have certain criminal investigations by the

9   Department of Justice that we're willing to give to you, but

02:17   10  we're not going to go get it all.

11       And I said, you have to go get it all; you have to

12  satisfy yourself that there is nothing in there about Forster

13  that goes to his character for truthfulness, his motivation for

14  wanting to testify on behalf of the government to reduce his

02:18   15  sentence; you have an obligation to go to your colleagues in

16  the Department of Justice.

17       I am not asking for them to go to any other department

18  in the United States the government but their colleagues in the

19  DOJ.

02:18   20       THE COURT:  All right.  Well, let's take it a bit at

21  time.

22       From the government, Bryan -- Bryan says -- at least a

23  quote from Bryan says, "We agree with Robertson that the scope

24  of the Government's obligation under 16(a)(1)(C) should turn on

02:18   25  the extent to which the prosecutor has knowledge of and access

1   to the documents sought by the defendant in each case.  The

2   prosecutor will be deemed to have knowledge of and access to

3   anything in the possession, custody, control of any federal

4   agency participating in this same investigation of the

02:18   5   defendant."

6       It says -- a few paragraphs before that -- "We agree

7   that a federal prosecutor need not comb the files of every

8   federal agency which might have documents regarding the

9   defendant in order to fulfill his or her obligations under Rule

02:19   10   16(a)(1)(C)."

11       So breaking that up, do you have knowledge of and

12   access to anything in the possession custody or control of any

13   federal agency participating in the same investigation?  And so

14   let's just talk about first the same investigation.  Have you

02:19   15   produced that material?

16       MR. ARNZEN:  We have.  And if I could just briefly

17   define "the same investigation."  We consider that to be the

18   same criminal investigation into these two companies that are

19   subject to the indictment, Your Honor, Kelvin Medical and Eco

02:19   20   Science Solutions.

21       We have taken all the materials that this office and

22   the San Diego office of the FBI collected during the course of

23   those investigations and we've produced that.

24       We've also asked the SEC -- who we don't consider to

02:19   25   be part of the prosecution team, but nonetheless, we went to

1   the SEC and asked the investigative teams, for the purposes of

2   those two companies, for all information they had on the

3   investigation of those two companies so that they could -- they

4   could prepare their civil action, which is pending before Your

02:20   5   Honor.

6          We've gotten all of those materials, and we've

7   produced that as well.

8          THE COURT:  So in your view then, you've complied in

9   that you have produced everything that you have knowledge of

02:20   10   and access to anything in the possession, custody, or control

11   of any federal agency participating in the same investigation

12   of the defendant in this case.

13          MR. ARNZEN:  That's right Your Honor.

14          THE COURT:  All right.  And so the request then comes,

02:20   15   counsel, is that you are asking the government to search the

16   Department of Justice for any investigation that -- separate

17   and apart, that doesn't include the charges in the indictment,

18   separate and apart from this case?

19          MR. GIBBONS:  No, not really, Your Honor.

02:20   20          In listening to the government talk -- we had this

21   conversation -- almost the same identical conversation.  What

22   the government is suggesting is that they have narrowly defined

23   what their team is and narrowly defined what criminal

24   investigation.

02:21   25          When they -- when they confronted Mr. Forster at the

1   airport and turned him, they had an arrest warrant and a

2   separate indictment not having to do with ESSI, not having to

3   do with Kelvin Medical, the two companies that are the subject

4   matter of this indictment, so they are really parsing this.

02:21   5          They didn't indict on that.  They didn't indict my

6   client on that third fact pattern, but my client is aware of

7   it, and Mr. Forster is cooperating with the government because

8   of other conduct that the government is well aware of and

9   turned him based on that.

02:21   10          THE COURT:  Excuse me.  Is that the Cleveland case?

11          MR. GIBBONS:  I am not sure where that case is at,

12   Your Honor.  I haven't gotten those documents yet.

13          THE COURT:  Well, there is cases that --

14          Well, from the government, then --

02:21   15          MR. ARNZEN:  Sure.

16          THE COURT:  -- certainly you mentioned the companies

17   that are the subject of this -- this criminal indictment, and

18   you've represented that you've gone to the SEC.  To the extent

19   that the SEC has documents that relate to this investigation

02:22   20   that is charged in this indictment, the most recent indictment,

21   you got those documents and you produced them?

22          MR. ARNZEN:  We have, Your Honor.

23          THE COURT:  So now with respect to Mr. Forster -- and

24   he's a cooperator; is that right?

02:22   25          MR. ARNZEN:  That's right.

```
 1        THE COURT:  And so when the meeting took place and he

 2   was encouraged to cooperate, was he then shown an indictment

 3   from another case in another jurisdiction?

 4        MR. ARNZEN:  We have an affidavit supporting an arrest

 5   warrant in this district.  It is on a company called Cuba

 6   Beverage Company.  There is a large investigative file that

 7   went along with that and supported the affidavit.  That will be

 8   produced to the defendants this week, Your Honor.

 9        THE COURT:  All right.  And so that -- was that the

10   case that he -- he was shown the complaint and said, you know,

11   is -- that was a separate case, but you are going to produce

12   those documents; is that right?

13        MR. ARNZEN:  We will, Your Honor.

14        THE COURT:  All right.  So then, Mr. Gibbons, what

15   else is left after that?

16        MR. GIBBONS:  Well, in the discovery that was

17   produced, we saw a reference to a case out of Cleveland.  We

18   asked the government to go and get those files because it was

19   clear that Forster was being looked at criminally and maybe was

20   even indicted in Cleveland.  I wasn't sure.  We specifically

21   asked for that.

22        The response from the government was we, as the

23   prosecution team, have certain records in relation to the

24   Cleveland investigation; we're willing to give you those

25   documents in relation to the Cleveland investigation in our
```

1    possession, but we're not going to call back to Cleveland and

2    get anything more.

3           I said I appreciate what you have, and I'll take that.

4    But I think it is the Government's obligation to go get all of

02:23    5    that, and that is where we hit a loggerhead in relation to

6    Cleveland.

7           THE COURT:  Are there any other cases, or is that the

8    last one?

9           MR. GIBBONS:  Those are the ones that I know of, but

02:23    10    the government wrote to me and said that they are aware that

11    Forster has been doing this and has been under investigation

12    for many years by many offices.

13           I don't have any information about that except my

14    good-faith request, and the motion is you, the Department of

02:24    15    Justice, have to ask your colleagues, since you are going to be

16    flipping Forster -- Forster is your key witness in this case --

17    I have to have a background on Forster, to attack his character

18    for truthfulness, to attack his credibility, to really attack

19    why it is he turned on my guy, and in my view of the case

02:24    20    entrap my guy.

21           Forster is the main bad guy in this thing.  And what

22    he was facing -- what drove him is central to our defense.

23    I've asked the Department of Justice to go back to their

24    colleagues and get that, and here's my basic request -- the

02:24    25    government knows how to go get that when they want to flip

1    somebody.  They call and get the important information out of

2    Cleveland.  They know about Cuba.  They know about other things

3    with Michael Forster.

4         But then when the defense wants something, they say

02:25    5    no, no, no, that is not part of the prosecution team; we at the

6    Department of Justice don't need to go do that.  And I am, it

7    is about one guy; it is about a guy that you know about.

8         And you have an obligation -- I believe the Department

9    of Justice, within the confines of the US Attorney's Office, if

02:25   10    you have knowledge of this stuff, you have to tender it to the

11    defense.  That is my argument in a nutshell.

12         THE COURT:  All right.  So with respect to the

13    Cleveland case, what has been produced there?  Was that an

14    investigation that didn't -- that wasn't indicted, or -- tell

02:25   15    me about that case.

16         MR. ARNZEN:  Sure.  There was a large investigation

17    out of Cleveland into two companies, gepco (phonetic) and loose

18    rose (phonetic).  There were, say, less than ten people

19    indicted but more than five.

02:25   20         Mr. Forster received a target letter because he had

21    some tangential relationship or even greater relationship to

22    that case.  He received the target letter, and he was not

23    indicted.

24         The investigation was not carried out by the FBI here

02:26   25    in San Diego.  It was not investigated -- or the investigation

1    was not overseen by the prosecutors here in the Southern

2    District of California.  It was run instead out of Cleveland,

3    the Cleveland FBI and the Cleveland US Attorney's Office.

4         The SEC also has a case with respect to those

02:26  5    companies in Cleveland, and it, too, filed a case.  I say that

6    because one of the attorneys for the SEC that worked on that

7    Cleveland case is also working on this -- I don't want to say

8    "this case" because it is not the criminal case, but she worked

9    on the SEC's investigation that lead to its complaint on the

02:26  10   civil side before Your Honor, in the -- SEC v. Giguiere.

11        THE COURT:  Is the indictment public in the case, the

12   Cleveland case?

13        MR. ARNZEN:  It is.  The trial has taken place.  The

14   sentencings -- all but one of the defendants has been -- maybe

02:26  15   all of the defendants have been sentenced, Your Honor.

16        THE COURT:  Did Forster testify in the case?  Was he

17   given any --

18        MR. ARNZEN:  No.  He did not cooperate.  He was not

19   charged.  He did not make any statements.

02:27  20        There are three bits of evidence that this office did

21   obtain from that investigation.  There is a face-to-face

22   meeting that was recorded by a cooperator against Forster, and

23   then there were two phone calls -- I think there were two phone

24   calls -- between those two that were recorded by the same

02:27  25   cooperator, and there is a series of text exchanges, again, the

1    same cooperator with Mr. Forster.

2           We have got those three or four bits of evidence that

3    we obtained from the Cleveland office of the FBI a year ago,

4    say, but beyond that we do not have the entire file, Your

02:27  5    Honor.

6           THE COURT:  And have those been produced?

7           MR. ARNZEN:  We'll produce those this week.

8           THE COURT:  So let's put aside, the rest of that, for

9    a moment then, Mr. Gibbons.

02:27 10           And then with respect to Forster, is he -- is he

11    currently cooperating in other cases, undisclosed at this

12    point?

13           MR. ARNZEN:  He is, Your Honor.

14           THE COURT:  Now, if he testifies in the case -- well,

02:28 15    let's -- if he -- I assume he is getting some benefit by

16    cooperating.

17           MR. ARNZEN:  Yes.  There is a cooperation agreement.

18    We have produced that in discovery to the defendants here, and

19    that calls for us to analyze his substantial assistance in

02:28 20    light of Section 5K.

21           THE COURT:  For what he does in this case; is that

22    right?

23           MR. ARNZEN:  That is exactly right.

24           THE COURT:  But he has other cases that have been

02:28 25    undisclosed at this point; is that right?

1        MR. ARNZEN:  Other cases -- he is cooperating in other

2    investigations that we expect to make cases from in the future.

3        THE COURT:  He is getting some benefit in that?

4        MR. ARNZEN:  He is, Your Honor.

02:28   5        THE COURT:  Being paid or something?

6        MR. ARNZEN:  No, he is not being paid.  He is simply

7    expecting a benefit on his sentence under Section 5K.

8        THE COURT:  All right.  And so -- well, when he

9    testifies -- assuming he testifies, is it the expectation of

02:28   10   the government that they will disclose what he's been doing

11   since the time that he was indicted in these other cases?

12       MR. ARNZEN:  We would hope to be able to disclose the

13   general nature of what he is doing.  We do not think that we

14   will have charged or indicted those cases by that time, Your

02:29   15   Honor.

16       THE COURT:  Although, doesn't it seem that -- I mean,

17   the jury would be entitled to know that he -- he somehow -- I

18   don't want to say beholden to the government, but he is hoping

19   from the government in connection with this case, and that he

02:29   20   is currently doing other things to help get additional

21   benefits; correct?

22       MR. ARNZEN:  Yeah.  I absolutely think the jury is

23   entitled to hear it.  It is a good subject for

24   cross-examination, but they have enough information to elicit

02:29   25   that on cross so that they can then make the argument, you are

14

1   still working for the government; you are still going out and

2   doing similar things that you did to my client; you are doing

3   those things in order to get a benefit at sentencing that the

4   government will recommend.

02:30    5        They will have plenty of information to do that.  They

6   do not need specific information with respect to the cases that

7   Mr. Forster is currently working on to do it.

8        THE COURT:  So you intend to -- how many

9   investigations are there that he is working on?

02:30   10        MR. ARNZEN:  There are at least two other

11  investigations that have not been indicted thus far, and we do

12  not expect to indict until after the trial.

13        THE COURT:  All right.

14        MR. ARNZEN:  And there may be more, Your Honor, just

02:30   15  in full disclosure.

16        THE COURT:  All right.  And all of the benefits that

17  he is getting in these other investigations, it is not monetary

18  compensation.  It is a benefit that he expects to, in essence,

19  work off his sentence in this case --

02:30   20        MR. ARNZEN:  That's exactly right.

21        THE COURT:  -- by continuing to do other things?

22        MR. ARNZEN:  Yes, Your Honor.

23        THE COURT:  Mr. Gibbons, we're not there yet, so I

24  understand you want every detail -- or do you want every detail

02:30   25  of the investigations, or what is it -- what specifically are

1    you requesting?

2              MR. GIBBONS:  Yes.  I mean, a short answer is yes.  If

3    Michael Forster cooperating in ongoing investigations and

4    Michael Forster expects to get a benefit of that, Michael

02:31  5    Forster expects to maybe get himself all the way down to

6    probation, it is not an effective cross-examination for me to

7    generally ask Michael Forster a whole bunch of questions as

8    illuminated by the government.

9              I'll look silly.  I'll look unprepared.  I'll look

02:31  10   general.  And it will not work.  It will be ineffective.

11             You know, the government -- you know, this is the

12   choice -- we all sat in his shoes.  The government made a

13   choice to roll Michael Forster, and then they made a choice to

14   continue to use him.

02:31  15            One of the costs of continuing to use him, if you want

16   to use him in an ongoing indicted case is you have to disclose

17   it.  I don't think what we're asking for is unreasonable.

18   Michael Forster is in the middle of this case.  He is the whole

19   case in all honesty.

02:32  20            And we're going to defend one of the fact patterns on

21   its substance.  The second fact pattern, the Kelvin Medical is

22   completely different.  That fact pattern involves only after

23   Forster decides to cooperate with the government.  That is the

24   fact pattern that involves matched trading and tapes that the

02:32  25   government is going to rely on which is qualitatively different

1   than how Michael Forster and my client acted in relation to the

2   indicted ESSI fact pattern.

3           So, yeah, Michael Forster is a key to my defense in

4   this case, and I need to see what is motivating Michael

02:32   5   Forster.  I need to see what he has been doing in the last

6   month since he got my client involved in certain match

7   transactions.  Maybe he is doing the same thing.  Maybe the MO

8   is the same.

9           But I have to attack his character for truthfulness,

02:32   10   and I need to know -- to be effective in representing my client

11   trying to keep him out of jail, I need to know what the

12   government has been doing with Michael Forster.

13           All I am asking for is a level playing field, Your

14   Honor.

02:33   15           THE COURT:  Well, at some point -- I am not prepared

16   to rule on it today, and I'll give you each an opportunity to

17   brief that specifically.  The government in a future pleading

18   can lay out specifically what you are prepared to disclose with

19   respect to Forster, all the details that you are -- that you

02:33   20   are prepared to give with respect to that.

21           I'll give defense counsel an opportunity to argue why

22   that is insufficient and why you need more, and then you can

23   each support it with the case authority, and I'll make a ruling

24   on it.  I am not making a rule on it now.

02:33   25           I understand there is some appeal to both sides.

1    Although, the government does -- you do make a decision as to,

2    you know, the timing of this and whether you elect to use

3    somebody.  And certainly a risk that a lot of this could be

4    disclosed was well-known.  So you have the dates in mind, and

02:33    5    so, you know, that is something to think about.

6             I haven't made a decision yet one way or the other.

7    I'll give you each an opportunity to weigh in with the

8    specifics.  The government can tell you specifically what they

9    are going to give, and you can respond why you think that is

02:34    10   insufficient.

11            So with respect to Forster, for things that he has

12   been involved in, the government has indicated they've

13   addressed the information they have in the -- in this

14   investigation as well as what the SEC has, and they've

02:34    15   indicated they are going to give that.

16            They've indicated the Cuba investigation, they are

17   prepared to turn those materials over.  Then they also talked

18   about that the Cleveland investigation, they characterized his

19   involvement, and they indicated that they are going to give

02:34    20   over certainly some pieces of evidence that they have in that

21   case.

22            Are there other cases that the government is aware of

23   where Forster was involved in -- where he was the subject of

24   other investigations outside of what we have spoken about?

02:34    25            MR. ARNZEN:  Yes, Your Honor.

1          THE COURT:  How many of those are there?

2          MR. ARNZEN:  I know of one, and I have every

3    expectation that there are more.  I'll describe the one that I

4    know of first, if that is okay?

02:35    5          THE COURT:  Sure.

6          MR. ARNZEN:  The SEC filed a case in 2017 or 2018,

7    with respect to SEC vs. Flowers.  It is against two individuals

8    and their company.  Our office and the FBI investigated

9    alongside the SEC, but in a more passive way.  We reviewed

02:35    10   information and documents obtained from the SEC in that case.

11         THE COURT:  Excuse me for interrupting.  Was that in

12   this district?

13         MR. ARNZEN:  No, sir -- I'm sorry.  Yeah, it was filed

14   -- it was filed down here in this district.

02:35    15         THE COURT:  A civil case?

16         MR. ARNZEN:  A civil case, yes, Your Honor.  SEC vs.

17   Flowers.  It is before Judge Houston.  We did not charge in

18   that case, but we have materials in that case.

19         I bring it up because Forster had some involvement in

02:36    20   that scheme.  He was not charged on the civil side, and as I

21   said, he did not -- he did not get charged criminally in that

22   case either.

23         We have that investigative file that we received from

24   the SEC, and we're prepared to turn that over to the defendant

02:36    25   this week as well.

             1          THE COURT:  All right.  Any others, other than that

             2   one?

             3          MR. ARNZEN:  That I specifically know of, Your Honor,

             4   no.  Again, I have every expectation if the FBI -- if we called

02:36        5   every field office in the nation, there are a lot of white

             6   collar squads that investigate this type of scheme that would

             7   say, yeah, Forster has been on our radar screen before.

             8          THE COURT:  So you've mentioned, though, every case

             9   that you are aware of; is that right?

02:36       10          MR. ARNZEN:  There is one more, Your Honor, that I

            11   should mention.  It actually involves this case.  We did a --

            12          THE COURT:  Other than the ones that you are under

            13   investigation.  Obviously, you haven't mentioned those --

            14          MR. ARNZEN:  You are right, Your Honor.

02:36       15          THE COURT:  -- that are currently under investigation.

            16          MR. ARNZEN:  Thank you.  There is one more that I

            17   should mention.  It is Long Island Iced Tea Corporation.  I

            18   mention that because Mr. Forster had some involvement.  There

            19   is evidence of insider trading by the defendants in this case

02:37       20   that we just came across on Defendant Lindsay's cellphone, so

            21   we have a warrant and an affidavit supporting the search

            22   warrant on the phone.  We've produced -- or will produce this

            23   week the affidavit.

            24          And so Mr. Forster, to our knowledge, had some

02:37       25   involvement in that scheme as well.  We're still researching

1   that, analyzing it, investigating that, but that is one other

2   scheme that we have knowledge of that I think I should put on

3   the record here.

4          THE COURT:  So as you obtain the documents -- and is

02:37   5   it correct to say that if you go through and you find anything

6   in the -- in your investigation that suggests that Forster was

7   involved in that scheme or did anything illegal in that, you

8   would turn that over as well?

9          MR. ARNZEN:  We would, Your Honor, yeah.

02:38   10         THE COURT:  All right.  And so have we covered

11   everything now that you are aware of?

12         MR. ARNZEN:  A moment, Your Honor.

13         (Pause.)

14         MR. ARNZEN:  I think we covered all the ones that are

02:38   15   mentioned in the briefs as well.  There is a case, United

16   States vs Luke Zouvas.  That is disclosed in our response in

17   opposition.  That is a money laundering sting case that

18   Mr. Forster was involved in.

19         THE COURT:  Do you have any documents relating to

02:38   20   that?

21         MR. ARNZEN:  We do.  That was proactive cooperation.

22   Mr. Forster had no misconduct in that case.  Everything that he

23   did, he did at our instruction in that case.  So we, of course,

24   have a body of evidence.  We have not turned that over

02:38   25   typically because it falls under the proactive cooperation

1    rubric if there is one.  We would like to include that in our

2    briefing to Your Honor if we could.

3          THE COURT:  That's fine.

4          MR. ARNZEN:  And there is, of course, what we refer to

02:39  5    loosely as the companion case, United States vs Hackett.  That

6    is before Judge Moskowitz.  Mr. Forster made tapes in that case

7    just like he made in this case, but I think that case is well

8    known to the defendants, and all the discovery materials, the

9    entire discovery file in that case, will be made available to

02:39  10   the defendants in this case this week.

11         THE COURT:  All right.  Mr. Gibbons, are we now then

12   at a situation where your view is, well, with respect to the

13   Cleveland case, you are entitled to more in the Cleveland case

14   that you've been given?  Have you received anything yet from

02:39  15   the Cleveland case?

16         MR. GIBBONS:  We have not.

17         THE COURT:  So you are awaiting that.

18         Also, in future briefing, can you -- after what you --

19   after you get that, you can review it, and then if your

02:39  20   position is, you know, this is enough -- I would need every --

21   tell me what else you think you need.  It might be, based on

22   what you get, you might say, well, this is enough; I can

23   cross-examine on this.

24         But if you need more and you think you are entitled to

02:39  25   more, then you would address, all right, this is what I've

1   gotten, but I think I am entitled to a lot more than this.

2       The government has indicated now that -- they told you

3   what they have and they have indicated what they are going to

4   give, and then to the extent they are not giving the proactive,

02:40  5   they'll make some disclosure, and they'll have an opportunity

6   to brief, this is why we think we're only required to give

7   this, and you can argue why you need more, if that is the case,

8   and I assume it will be the case.

9       Now, is the last area of dispute -- is that -- is it

02:40  10  your view now that the government would have, in addition to

11  what they've indicated that they've done or will do, that they

12  have a separate obligation now to canvas all 93 other US

13  Attorney Offices to see, does anybody have -- know anything

14  about these other cases, anybody have any investigation of

02:40  15  Michael Forster?

16       MR. GIBBONS:  I guess, for the record, I would like to

17  say yes to preserve that argument --

18       THE COURT:  Sure.

19       MR. GIBBONS:  -- but from a practical standpoint, I

02:40  20  would like a representation from the government, either in

21  court or if they think about it, in writing, that even how

22  they've defined their prosecution team being the FBI, San

23  Diego, the US Attorney San Diego.

24       And in my view -- and I don't know what the Court is

02:41  25  going to rule on this -- is the SEC LA, New York, lawyers and

02:41

1    analysts who were involved in the investigation of ESSI and

2    Kelvin Medical as the prosecution team, if the government tells

3    me that the FBI doesn't know about that, the agents that he is

4    working with in San Diego doesn't know about any other criminal

5    activity of Michael Forster, I may be -- I may be okay with

6    that.  Okay.  But I don't know that right now.

7         I suspect -- and I am just going on -- because I am in

8    the dark -- as you can hear, I don't have a lot of discovery

9    yet about Michael Forster -- but the government wrote to me and

02:41    10   said, I quote, as for Mr. Forster, he's been involved in

11   security-related misconduct for many years, period.

12        I mean, from a defense lawyer's standpoint, the

13   government seems to know a heck of a lot more at this point

14   than I do.  And I know the government is representing that I'll

02:42    15   get a lot in the next week or so.  I don't know what volume

16   that is, and I don't know what timetable I have to get through

17   that and back here.

18        THE COURT:  All right.

19        MR. GIBBONS:  But that is kind of where I am at right

02:42    20   now.

21        THE COURT:  Why don't we take it in stages, because I

22   don't -- I understand your concern is that you want to be as

23   thorough as possible.  I don't know that there is support to --

24   and I don't think that you are necessarily asking this -- to

02:42    25   order the government to contact every US Attorney's Office,

24

1    contact every FBI field office, contact every SEC office, and

2    make them affirmatively check to see if his name comes up.  I

3    don't think that they are required to do that.

4            MR. GIBBONS:  I don't have a case to support that.

02:42    5        THE COURT:  But, on the other hand, certainly if the

6    government was aware or if an FBI working on this case, working

7    with the government, knew of three others that were some other

8    place, then I think the government may have an obligation to

9    disclose that, but let's take it bit by bit.

02:43   10       Let's allow the government an opportunity to make the

11   productions that they are going to make, and then in writing

12   they'll have an opportunity to say, all right, and here is what

13   we know about, and this is what we're not producing.  There is

14   more documents in the Cleveland case.  We personally don't have

02:43   15   them.  We've given what we think is required to allow you to

16   comply with the Brady obligations, but there is other documents

17   in the Cleveland case, we're not giving you those.

18       We have other proactive investigations.  He's doing

19   things generally.  We have an agreement with him.  He is

02:43   20   getting a benefit, theoretically, and we won't give you any

21   more detail other than this, and that is why we're not giving

22   them to you.

23       And somewhere if the government makes some examination

24   and -- put somewhere in the record and say, this is what I

02:43   25   know, this is what the government lawyers know about, this is

1    what the FBI knows about.  We don't know of anything else that

2    we have not mentioned in this -- in these documents.

3         So we told you it is either you have gotten it; we've

4    given you partial, some of the things; or we haven't given you

02:44    5    any -- we've just given you generalities, but this is the scope

6    of what our knowledge is.

7         And then we can come back and see whether they have to

8    give more about -- more that they know about that they haven't

9    given, and then we can talk about this obligation for them to

02:44   10    affirmatively search elsewhere.  I don't think that they have

11    one, but I am not ruling in advance, but I don't think that

12    there are cases that require them to go out and affirmatively

13    search, you know, every US Attorney Office, every SEC office,

14    but to the extent that they know of it, that is a different

02:44   15    story.  So that is where we are with the discovery issues.

16         So from the government's standpoint, how much time do

17    you want to put something together to, in essence, summarize,

18    this is what we've given, and we've given partial documents on

19    the Cleveland case.

02:44   20         But with respect to the proactive investigations,

21    maybe give me some suggestion -- our timeline is; we don't

22    think these cases are going to finish before the trial date,

23    and we -- this is the most that we want to give; we'll give

24    this information, but we don't want to give any more than that.

02:45   25         So how much time -- and also an opportunity to confirm

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | with the agents that their knowledge of the case is similar to       |
|       | 2  | what yours is with respect to the scope of Forster.                  |
|       | 3  | How much time do you want for that?                                  |
|       | 4  | MR. ARNZEN:  Middle of next week, Your Honor.                        |
| 02:45 | 5  | THE COURT:  I'll give you more than that.                           |
|       | 6  | MR. ARNZEN:  Friday -- a week from this Friday is                    |
|       | 7  | fine.                                                                 |
|       | 8  | THE COURT:  All right.  So --                                        |
|       | 9  | MR. ARNZEN:  May I ask a question, though?  So you                   |
| 02:45 | 10 | ask -- in your question is an idea about what the FBI agent has      |
|       | 11 | in mind.                                                             |
|       | 12 | THE COURT:  Right.                                                  |
|       | 13 | MR. ARNZEN:  I just want to be clear.  You are not                   |
|       | 14 | asking the FBI to go out and do the canvassing, what you spoke       |
| 02:45 | 15 | of?                                                                   |
|       | 16 | THE COURT:  No, I am not.                                           |
|       | 17 | MR. ARNZEN:  Just what he knows of.                                  |
|       | 18 | THE COURT:  Like each of you talk about the                         |
|       | 19 | prosecution team and that really decides the issue.  And I          |
| 02:45 | 20 | don't know that -- from looking at Bryan and some of the other      |
|       | 21 | cases, they basically talk about what the prosecutor knows,         |
|       | 22 | and, you know, Bryan, there was that distinction that was           |
|       | 23 | limited to the District of Oregon, but the prosecutor knew of       |
|       | 24 | or had reason to think there might have been some elsewhere.        |
| 02:46 | 25 | But here it is really about what the prosecutor knows               |

1  about and what the government agents know about, but it is not

2  a case of what they could know about.  Mr. Gibbons raises the

3  point, well, what if the FBI -- I assume his point was, if

4  there is an FBI agent working on this case, and he knows or she

02:46  5  knows, just through experience, that, hey, Forster was involved

6  in these five other things in West Virginia and nobody knows

7  about it, but that agent knows but nobody else does.

8       And, you know, you wouldn't have to say because you

9  didn't know -- you understand the point?

02:46  10       MR. ARNZEN:  I do.

11       THE COURT:  But it is not a case where I am saying,

12  hey, you have to go back and have the FBI agents contact -- do

13  the same thing, contact every FBI agent or every office to ask

14  about it.  It is really what you and -- when I talk about the

02:46  15  "team," I am talking about at this point, you know, the FBI

16  agents and the AUSA with.

17       Respect to the SEC, they have given you the

18  information -- at least they have represented that they are or

19  they have given you the SEC documents that relate to this

02:47  20  investigation, which I think they are required to do, the SEC

21  investigation which relates to this investigation.

22       If there is SEC documents that relate to the Cleveland

23  investigation, I mean, that is another matter, so I am not -- I

24  haven't quite -- I certainly haven't ruled on that point yet.

02:47  25       So why don't we try this, then we'll give the

1    government until -- why don't you do your next submission with

2    respect to the written materials by March 25th.

3              And then, counsel, do you want to April 8th to

4    respond?  Is that enough time for you, or do you want another

02:47   5    week?

6              MR. GIBBONS:  Maybe another week.  It sounds like

7    we're getting a large volume of materials.

8              THE COURT:  Then on the 15th.  So you respond on the

9    15th.  And I'll give the government an opportunity to reply on

02:47   10   the 22nd of April.

11             Just raise again, you know, what is sufficient and

12   what is not -- or why it is not, and then we can narrow down

13   the -- narrow down the issues.

14             There is some other issues we can raise -- that we can

02:48   15   talk about today.  Next is the Government's refusal to disclose

16   the interviewing agent's handwritten notes.

17             Mr. Gibbons, is it your theory that they are required

18   to -- they would be required to give the notes, one, if the

19   notes were actual Jencks statements.  They are probably not,

02:48   20   but possibly.  If they were Jencks statements, they would be

21   required to give the handwritten notes.  And if there is

22   anything that is Brady in the notes -- and Brady being where

23   the notes would be inconsistent with a 302 that was

24   generated -- they would be required to give them under that

02:48   25   theory as well; is that right?

1          MR. GIBBONS:  That's correct.

2          THE COURT:  Is that the extent for the legal support

3   of the notes?

4          MR. GIBBONS:  Yes, Your Honor.

02:48   5          THE COURT:  All right.  So the government -- obviously

6   the government is aware that under those -- if the notes were

7   actually statements under the Jencks Act they would be required

8   to give those, and if they were Brady, they would be required

9   to give those.  Do you agree?

02:49   10         MR. ARNZEN:  Yes, Your Honor.  We are aware of those

11  obligations.

12         THE COURT:  All right.  So you have to -- obviously,

13  they have to be preserved.  Somebody has to -- somebody has to

14  look at them to see if there is any Brady in there.  Do you

02:49   15  agree?

16         MR. ARNZEN:  That has happened, Your Honor.  If there

17  were Brady in there, they ended up in the reports that have

18  been produced.

19         THE COURT:  I understand.  And all the cases that you

02:49   20  talk about and the cases that you cite talk about where there

21  are issues that subsequent -- usually subsequent to the trial

22  it comes out that there was -- the notes were incomplete, and

23  the part that was incomplete was Brady, and it didn't find its

24  way to the 302, and that therein becomes the problem.

02:49   25         But as far as legal authority to require the

1    government -- even though they are aware that they have the

2    Brady obligation, they have a Jencks obligation -- to require

3    them -- to say, well, never mind, you have to do it anyway;

4    give all the notes now in advance.  You would be asking me to

02:49    5    rely on my inherent authority to do that -- my inherent, "I

6    order you to do it, therefore you must do it" authority.

7         MR. GIBBONS:  I like that authority.

8         THE COURT:  Yeah.  I haven't really used that, though,

9    so to the extent that it is Jencks, Brady -- and the Brady --

02:50    10    the government is aware that the defense is likely to be

11    entrapment that, you know, they have an idea, so they are in a

12    pretty good position to look at the notes.

13         So to the extent that you are requesting me to order

14    the government to give you all the notes, that request is

02:50    15    denied.

16         Next is the Government's refusal to disclose material

17    related to Michael Forster.  We've spoken about -- we've spoken

18    about much of that.  I think the prior misconduct, you refer to

19    that.  That is basically the prior criminal conduct or conduct

02:50    20    that the government was aware of that wasn't charged; correct?

21         MR. GIBBONS:  Correct.

22         THE COURT:  So we'll have some briefing on that.

23         Ongoing the government cooperation, that is also

24    included in the future briefing.

02:50    25         Communication between Forster and agents, this would

1    primarily be perhaps emails or conversations to say, are you

2    going to record, or are you going to do this, are you going to

3    do that?

4              MR. GIBBONS:  Here is why it is raised.  The

02:51  5    government candidly has put in writing to me that there was

6    contact between agents and Michael Forster voluminous times.

7    Sometimes more than once a day for weeks on end.  And we only

8    have six or eight reports of interviews.  We have very little

9    by way of when those other contacts occurred and what the

02:51  10   substance of them was.

11             What I am going on is experience that normally when an

12   FBI agent meets with a cooperator, particularly a cooperator

13   who is already facing criminal charges, there is going to be

14   some notation of timing, when, where, how long they talked,

02:51  15   where that occurred, whether it be a log, whether it be a text,

16   whether it be a note on a piece of paper.

17             We don't have any of that in relation to putting that

18   sequence together.  And, you know, I am going to rely on the

19   good faith of the government.  If they say on the record that

02:52  20   those documents don't exist, well then, I am stuck with it, but

21   right now I don't have that information.

22             THE COURT:  Well.  It is my understanding, from

23   looking at your papers, they indicated or you referenced or

24   indicated that they told you that there is some nonsubstantive

02:52  25   communications that the government says that they have that

1    they are not giving those over; correct?  Nonsubstantive,

2    right, they are not required to give those?

3         MR. GIBBONS:  If it shows contact between an agent and

4    a cooperator, I believe I am entitled to see those.  If I have

02:52    5    them all, then I have them all, but I am not sure of that.

6         THE COURT:  What if it says, you know, we're going to

7    meet tomorrow at 10:00, would you be entitled to that?

8         MR. GIBBONS:  Yes.

9         THE COURT:  Because?

02:52   10         MR. GIBBONS:  Because I need to know how many times

11   the cooperator met with the government and got instructions to

12   put it into a timetable of how many times he met with my

13   client, when, and when these taped recordings all occurred.  I

14   need to put this sequence together.  I suspect that the agents

02:52   15   were running this cooperator in a very controlled way, based on

16   the tapes I've seen.

17         I would like to see the sequence of those meetings

18   between the government agents and the cooperator.

19         THE COURT:  Well, I mean, it would seem that -- to the

02:53   20   extent that the government could tell you specifically how many

21   times the agents met, have you produced that information?

22         MR. ARNZEN:  No, Your Honor.  If there was a

23   substantive contact, it was noted or logged or reported on, and

24   they have those reports.

02:53   25         THE COURT:  All right.

            MR. ARNZEN:  What I was trying to describe are -- is a
steady stream of phone conversations between the agents and
Mr. Forster, and it usually happened after the agents listened
to a recording and then they gave instructions to Mr. Forster
about how to proceed.  In other words, what topics to raise on
the next call, making sure that they didn't, for example,
violate the attorney-client privilege.

            These are all conversations that happened on the
phone.  Those conversations weren't noted or logged or reported
on, period.  If we got -- if there was a report or a log or a
note made with respect to a conversation or a communication,
that has already been turned over.

            THE COURT:  All right.

            MR. GIBBONS:  So I guess my -- if I may, Your Honor.

            THE COURT:  Sure.

            MR. GIBBONS:  My definition of a substantive
conversation and the AUSA's is different.  What I heard the
government say is -- and they put this in writing too -- is
some of these what has now been described as nonsubstantive
conversation, there were instructions given from an agent to a
cooperator, that is substantive to me in relation to an
entrapment defense.  I want to know whatever they have on that
in relation to a written document.

            THE COURT:  And I think they are saying they don't
have written documents for that.

1          MR. ARNZEN:  That is exactly right.  Instructions were

2    given verbally, Your Honor.

3          THE COURT:  So with respect to -- like, every time

4    there was a communication between an agent and Mr. Forster, and

02:54  5    that there was a note made of the contact, a note, log,

6    something that would reflect the contact between an agent and

7    Forster, has that been provided?

8          MR. ARNZEN:  Affirmative.

9          THE COURT:  All right.  Next is emails from the case

02:55  10   agents to prosecutor summarizing the contents of recorded

11   calls.  What will be the relevance of that?

12         MR. GIBBONS:  Here we have --

13         THE COURT:  Excuse me for interrupting.  Isn't that

14   like a line sheet -- similar to a line sheet in a wiretap call?

02:55  15         MR. GIBBONS:  Sure.  I am not sure why I am not

16   entitled to it at all.  It is not privileged.  It is report of

17   some kind from the agent to a federal prosecutor.  I don't see

18   why it is not being produced.  I don't see what shields that

19   from being produced.

02:55  20         THE COURT:  Under what -- if an agent listens to the

21   call and says, I listened to the call, here's what the call

22   says, and they put that in an email to the agent -- to the

23   prosecutor, what the agent thinks the call says -- I mean, the

24   call is the call.  The call is the evidence.  The agent can't

02:55  25   come in and testify that the call said this.  I mean, it is the

         1    Best Evidence Rule.  The call is the recording.

         2          So to the extent that an agent says -- maybe describes

         3    a third of the call, what difference does it make?  Do you

         4    think that you could -- I'm sorry.  Like what is the --

02:56    5          MR. GIBBONS:  I --

         6          THE COURT:  -- under what theory do you get that?

         7          MR. GIBBONS:  I can give you some ways I think it

         8    could be relevant.  I already informed the Court and the

         9    government that we're going to put on at least in part an

02:56   10    entrapment defense, so now I have an agent instructing the

        11    cooperator in a certain way, and a call happens.

        12          And the initial impression of the special agent back

        13    to the prosecutor is here's what the call was about, and it

        14    doesn't yet get anybody to the finish line.  We haven't yet

02:56   15    gotten Giguiere to do anything criminal.

        16          And then it builds, and I see the calls take a

        17    different direction, and I see the criminality increase.  I see

        18    it go from disclosed trading, some advertising we're selling

        19    into, to now matched calls, and all of a sudden, the government

02:57   20    sits in the middle of that and how that evolves, I would like

        21    to see that.

        22          I can't tell that you those reports do that, but I

        23    would certainly like to see whether I can make a case that the

        24    summary reports being sent are so innocuous at first and then

02:57   25    grow because they needed to do something more to entrap my

1    client, I would like to explore that.

2         And if, as you say, Your Honor, all of this is

3    contained in reports of interview or the tapes, what is the

4    downside of producing them?

02:57   5         THE COURT:  Well, I think that, you know -- that --

6    part of the concern would be that if, you know, the agent says,

7    you know, the call said, you know, there is three topics on the

8    call, and the agent mischaracterizes the call because he

9    listens to it or listens to it live and says here's what it is,

02:57   10   here is my brief summary.  No one is going to be able to

11   accurately summarize exactly what is in the call.  The call is

12   the call.

13        And then the agent testifies and you say, well, you

14   said X, but we all heard the call, and you left out this and

02:58   15   this and this; you are lying; you are a terrible agent because

16   you listened to the call; and then you wrote some false report

17   down here, saying that it had one thing when the call had three

18   things; in fact, you got some of the names wrong; what type of

19   investigation -- investigator are you?  That is horrible.

02:58   20        Whereas, the reality of that is the agent is -- the

21   call is the call, and the agent is just giving their opinion at

22   that point or their best recollection of what it is -- of what

23   is in the call, and I think that is the concern and why there

24   is often -- when the line sheets are given -- I think this is

02:58   25   similar to line sheet, when they are given in a wiretap case,

1   generally the line sheets are given to assist the people

2   getting them to help know what kind of calls they want to

3   listen to or whether there are issues in particular calls.

4           And it is not unusual for there to be some agreement

02:58   5   that I'll give you the line sheets, but you can't use the line

6   sheets to impeach the agent based on line sheets that are not

7   going to be a direct representation of the call.  Typically

8   that is why there is that reference.

9           And so I don't find anything offensive about the

02:59   10   government saying, look, we'll give you these, but you can't

11   use these to cross-examine the agents on their ability to -- on

12   their ability of these agents.  So I don't really see -- you

13   know, I don't think it is unreasonable what the government is

14   requesting.  And I am looking at Rule 16, and I don't know, you

02:59   15   know, where that would fall.

16           If you are getting the call, and -- the call is the

17   evidence.  I mean, that is the evidence.  And somebody's

18   summary of it, you know, may be interesting to some, but it is

19   not likely -- it is about impossible to summarize a call as

02:59   20   good as the call.  I mean, that is -- I don't think that you

21   can do that.

22           MR. GIBBONS:  I don't disagree with anything that the

23   Court said.  What I was trying to explore -- and I understand

24   the Court's ruling; I won't belabor it -- is we have agents

02:59   25   running a cooperator.  How they interpret live what is

1   happening might influence their instructions to that

2   cooperator.  That is what I was looking for.

3        If the Court's ruling is this is like a line sheet, I

4   am not going to give you the whole thing without these

03:00   5   conditions, I am better off having them with conditions than

6   not, but I at least wanted to make my record in relation to why

7   I thought we were entitled to them.

8        THE COURT:  Right.  Although, it would seem, though --

9   if the argument is entrapment, then -- you can look at the

03:00   10  calls themselves and -- you can look at the calls and say,

11  well, you know, these first three calls, my client didn't have

12  any interest in this; and then four, five, and six, all of a

13  sudden he is in a whole different place; so I want to explore

14  what happened between call three and call four; and lo and

03:00   15  behold, there were eight meetings between the agents and

16  Forster; let's talk about what the agents told Forster, and

17  let's talk about how this happened that we got from three very

18  reluctant, not interested, to four, very excited about it.

19       So I think you -- where you want to go, I mean, that

03:01   20  is a proper place to go, but I think the evidence is the calls,

21  and the calls -- if you see a dramatic change you are going to

22  get that.  You are going to get the calls themselves, and you

23  are certainly not precluded from exploring anything you want to

24  explore with the agents about, well, how did this happen, and

03:01   25  what did you tell Forster?

1      So I think you can get to exactly where you want to go

2 and explore what you want to explore without requiring the

3 government to give the summaries of these calls that the agents

4 gave that would be under -- you know, a lot of different

03:01   5 conditions.  They are not expecting to necessarily accurately

6 reflect the entirety of the call.  That is the Government's

7 concern, and I think it is the same as in line sheets.

8      So at this point I am going to decline to order the

9 government to turn over those communications.  It is always

03:01  10 without prejudice for you to raise it again, and if you have

11 another argument where you think it is appropriate, in light of

12 the fact that you are getting the calls themselves, then I'll

13 consider it.

14      Proffer notes of the SEC agents, my understanding is

03:02  15 there aren't any; is that right?

16      MR. ARNZEN:  That's correct.  We confirmed with the

17 SEC that is the case.

18      THE COURT:  That is moot.

19      And they did return the cellphone; is that right?

03:02  20      MR. GIBBONS:  That is correct, Your Honor.

21      THE COURT:  All right.  So now have I -- have I

22 addressed the discovery issues?

23      MR. GIBBONS:  I believe you have, Your Honor.

24      THE COURT:  All right.  So let's set another time to

03:02  25 then talk about the discovery issues.  Why don't we say -- you

|   | 1 | can have an opportunity -- obviously, you've done a good job |

```
         1    can have an opportunity -- obviously, you've done a good job

         2    trying to work this out amongst yourselves, but when you --

         3    if -- you know, another meeting might help after you get --

         4    after the pleadings.

03:02    5            Mr. Lipman, you joined in the motion?

         6            MR. LIPMAN:  Yes.

         7            THE COURT:  Are there any additional --

         8            MR. LIPMAN:  I have one clarification that I would

         9    like to make based on what Mr. Gibbons said and what the

03:02   10    government has responded, and it was the issue of the non --

        11    the definition of the nonsubstantive calls and instructions

        12    that the government gave Mr. Forster.

        13            I don't view that as nonsubstantive at all, and I

        14    think we -- I think if, I heard right, we kind of blew past

03:03   15    that.

        16            THE COURT:  Well, I didn't -- I'm sorry for

        17    interrupting, but I don't think that we blew past it.  I think

        18    what, my understanding -- and maybe I am mistaken -- is -- I

        19    thought the government said that with respect to every -- every

03:03   20    communication that -- every document or notation that they had

        21    with respect to an agent's communication with Mr. Forster,

        22    anything that is in writing, a log, anything, they've given it;

        23    is that right?

        24            MR. ARNZEN:  That is correct, Your Honor.

03:03   25            THE COURT:  All right.  So the government doesn't have
```

1  anything that is in writing or reflects -- any communication to

2  Forster that is in writing that they haven't produced or are

3  going to produce; is that right?

4        MR. ARNZEN:  Yes, Your Honor.

03:03  5        THE COURT:  Was that your understanding, Mr. Lipman,

6  as well?  Was that -- your understanding?

7        Mr. Lipman, was your understanding that they had

8  written notations or logs of communications that they didn't

9  give, weren't intending to give, because they thought they were

03:04  10  nonsubstantive?

11        MR. LIPMAN:  That was my understanding.

12        THE COURT:  My understanding is that they said, no,

13  every written -- every notation we have, anything that is in

14  writing concerning a communication between the agents and

03:04  15  Forster that we have, we've given or we're going to give.

16        MR. ARNZEN:  That is what I intended to communicate,

17  and that is the case, Your Honor.

18        MR. LIPMAN:  Okay.

19        THE COURT:  All right.  Does that solve that?

03:04  20        MR. LIPMAN:  If that is what it is, that is what it

21  is.  That is not what I understood it to be said.

22        THE COURT:  Okay.  Let's talk about another date where

23  you can come back, and I'll have the discovery materials and --

24  you know, we've narrowed down the disagreements quite a bit.

03:04  25        So why don't we say -- does May 6th at 2:00 work?  I

```
 1   am flexible on the time.

 2           MR. ARNZEN:  We have a motions hearing April 22nd.

 3           THE COURT:  We can do it then.  We'll do it

 4   April 22nd.

 5           MR. ARNZEN:  Very well.

 6           THE COURT:  April 22nd at 2:00.  We can do that then.

 7   All right.

 8           MR. ARNZEN:  I have two more issues, if you are --

 9   Your Honor may I have a moment?

10           MR. GIBBONS:  I think the reply is due that day.

11           THE COURT:  It is.  Let's keep the same date.  You can

12   file a reply at that time.

13           MR. GIBBONS:  Okay.

14           THE COURT:  File the reply on the 19th, if you can do

15   that.

16           MR. ARNZEN:  Yes, Your Honor.

17           THE COURT:  All right.

18           MR. ARNZEN:  There is a superseding indictment.  The

19   defendants have not yet been arranged on that.  One of the

20   defendants is present now.  The other is not.  I wonder if Your

21   Honor had a preference as to how to get the defendants

22   arraigned on the superseding indictment.

23           THE COURT:  We can arraign one, and then, Mr. Lipman,

24   have the other one here.

25           MR. LIPMAN:  Your Honor, I don't know if Your Honor
```

03:04 (line 5)
03:05 (line 10)
03:05 (line 15)
03:05 (line 20)
03:05 (line 25)

```
 1   knows the bail conditions that were set by the Magistrate

 2   Dembin in this case.  My client is confined to a friend's house

 3   in Salt Lake City, can't leave the house.  He hasn't been out

 4   of the house in six months or whatever it is.

 5          I've been trying to talk to the government about

 6   allowing them -- getting them to allow my guy to move to an

 7   apartment in downtown San Diego.  We're still in discussions

 8   with that.  He is not even allowed to fly here by himself.  He

 9   has to be accompanied.  So I think under Rule 10 I can just do

10   a waiver of the arraignment, and --

11          THE COURT:  Well --

12          MR. LIPMAN:  -- if the Court is willing to accept

13   that.

14          THE COURT:  I am not inclined to.  What I am inclined

15   to do is give him relief from his bail conditions to allow him

16   to appear here so he can get arraigned here in person.

17          MR. LIPMAN:  A written waiver from him wouldn't be

18   sufficient too, Your Honor?

19          THE COURT:  Well, you can file one, but I prefer him

20   to be here.  Is it his intention that he is not going to come

21   to any court appearance and show up for the first day of trial?

22          MR. LIPMAN:  Well, no, no.  If we have substantive

23   motions, he'll be here.

24          THE COURT:  Well, that is likely to be on the 22nd.

25          MR. LIPMAN:  Okay.  As long as the government is
```

03:05

03:06

03:06

03:06

03:06

03:06

```
 1   content to wait until the 22nd, he will be here on the 22nd.

 2            THE COURT:  Any objection?

 3            MR. ARNZEN:  No, Your Honor.

 4            THE COURT:  I'll order him to appear on the 22nd at

 5   2:00.

 6            MR. LIPMAN:  And could we modify the bail -- do you

 7   want me to go back to Magistrate Dembin?  Do you want to modify

 8   the bail to allow him to fly by himself?

 9            THE COURT:  File a written request, and you can file

10   it with me, and I'll allow him to come.

11            MR. LIPMAN:  Okay.  Thank you, Your Honor.

12            THE COURT:  Let's arraign this gentleman.

13            THE CLERK:  Please state your true name.

14            THE DEFENDANT:  Gannon Giguiere.

15            THE CLERK:  You are informed that a superseding

16   indictment has been filed charging you with conspiracy to

17   commit securities fraud, manipulative trading, securities

18   fraud, and criminal forfeiture.  Have you seen a copy of this?

19            THE DEFENDANT:  Yes.

20            THE CLERK:  And do you further waive reading?

21            MR. GIBBONS:  We do.

22            THE CLERK:  How do you now plead to the superseding

23   indictment charging you --

24            THE DEFENDANT:  Not guilty.

25            THE COURT:  Anything else, counsel?
```

03:07 (line 5)
03:07 (line 10)
03:07 (line 15)
03:07 (line 20)
03:07 (line 25)

1      MR. GIBBONS:  Your Honor, I don't believe so, not from

2  the government -- we have a --

3      MS. BAHCALL:  Sorry, Judge, just briefly.

4      Thank you very much for entering the orders on the

03:08   5  joint motions regarding the assets.  I just wanted to make the

6  Court aware that we're continuing to negotiate about other

7  assets.  We're hoping to reach an agreement.  If not, we'll be

8  filing a motion with next week's motion date.

9      THE COURT:  Thank you.  Thank you for your

03:08  10  appearances.  We'll see you back --

11      MR. ARNZEN:  I'm sorry, Your Honor, our final issue,

12  very quickly.

13      We have identified a potential conflict in the

14  government's view with respect to the representation of

03:08  15  Mr. Giguiere.  We've had a civil and professional discussion

16  with defense counsel.  We think that our best course is to file

17  a motion for inquiry by the Court with respect to that

18  potential conflict.

19      THE COURT:  All right.

03:08  20      MR. ARNZEN:  And I wondered if the Court wanted us to

21  wait until the motions hearing date or wanted to see that

22  motion up sooner.

23      THE COURT:  No.  File it sooner, and so you can -- can

24  you file it then by -- file it by the 25th?

03:09  25      MR. ARNZEN:  Yes, Your Honor.

|       |    |                                                                          |
|-------|----|--------------------------------------------------------------------------|
|       | 1  | THE COURT:  March 25th.  And then, counsel, how much                     |
|       | 2  | time do you want for that?  Do you need three weeks for that?            |
|       | 3  | You can file it -- can you file a response by the 15th of                |
|       | 4  | April?  Does that give you enough time?                                  |
| 03:09 | 5  | MR. GIBBONS:  I think that gives us enough time.                         |
|       | 6  | We've had multiple discussions with the government about this.           |
|       | 7  | THE COURT:  Obviously the government has an obligation                   |
|       | 8  | to bring it to the attention of the Court when they learn about         |
|       | 9  | it.                                                                       |
| 03:09 | 10 | MR. GIBBONS:  Yes.                                                        |
|       | 11 | THE COURT:  Anything else?                                               |
|       | 12 | MR. ARNZEN:  Not from our perspective.                                   |
|       | 13 | MR. GIBBONS:  Nothing from Mr. Giguiere's perspective.                   |
|       | 14 | THE COURT:  Anything else, Mr. Lipman?                                   |
| 03:09 | 15 | MR. LIPMAN:  No, Your Honor.  Thank you.                                  |
|       | 16 | THE COURT:  Thank you, counsel, for your appearances,                    |
|       | 17 | and we'll see you on April 22nd.                                         |
|       | 18 | (Proceedings concluded at 3:09 p.m.)                                     |
|       | 19 | ---000---                                                                |
|       | 20 |                                                                          |
|       | 21 |                                                                          |
|       | 22 |                                                                          |
|       | 23 |                                                                          |
|       | 24 |                                                                          |
|       | 25 |                                                                          |

```
 1
 2                      C-E-R-T-I-F-I-C-A-T-I-O-N
 3
 4          I hereby certify that I am a duly appointed, qualified
 5   and acting official Court Reporter for the United States
 6   District Court; that the foregoing is a true and correct
 7   transcript of the proceedings had in the aforementioned cause;
 8   that said transcript is a true and correct transcription of my
 9   stenographic notes; and that the format used herein complies
10   with the rules and requirements of the United States Judicial
11   Conference.
12          DATED:  March 25, 2019, at San Diego, California.
13
14                             /s/ Melinda S. Setterman
                               _____
15                             Melinda S. Setterman,
                               Registered Professional Reporter
16                             Certified Realtime Reporter
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>April 16, 2019</u>, I caused to be filed electronically **EXHIBIT A TO DEFENDANT GANNON GIGUIERE'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY AND RETURN PROPERTY** with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to the e-mail addresses denoted below:

| | |
|---|---|
| ROBERT S. BREWER JR.<br>UNITED STATES ATTORNEY<br>AARON P. ARNZEN<br>ANDREW J. GALVIN<br>Assistant United States Attorneys<br>United States Attorney's Office<br>880 Front Street, Room 6293<br>San Diego, CA 92101-8893<br>Tel: 619-546-8384/9721<br>Emails: Aaron.Arnzen@usdoj.gov<br>Andrew.Galvin@usdoj.gov<br><br>*Attorneys for Plaintiff United States of America* | MICHAEL L. LIPMAN<br>KAREN LEHMANN ALEXANDER<br>DUANE MORRIS LLP<br>750 B Street, Suite 2900<br>San Diego, CA 92101-4681<br>Tel: 619.744.2200<br>Emails: mllipman@duanemorris.com<br>klalexander@duanemorris.com<br><br>*Attorneys for Defendant Oliver Lindsay* |

By: ___/s/ John F. Gibbons___
MIRIAM BAHCALL
Attorney for Defendant Gannon Giguiere
E-mail: bahcallm@gtlaw.com